UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL L. TALLEY,                             Case No.10-10784

          Plaintiff,                     John Corbett O'Meara
vs.                                          United States District Judge

U.S. FARATHANE,                              Michael Hluchaniuk
                                             United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION
MOTION FOR SUMMARY JUDGMENT (Dkt. 19)**

## I.   PROCEDURAL HISTORY

Plaintiff filed an employment discrimination and retaliation complaint against his former employer, U.S. Farathane, on February 25, 2010. (Dkt. 1). Defendant filed an answer to the complaint on May 6, 2010. (Dkt. 8). District Judge John Corbett O'Meara referred this matter to the undersigned for all pretrial proceedings on August 26, 2010. (Dkt. 11). On March 21, 2011, defendant filed a motion for summary judgment. (Dkt. 19). Plaintiff filed a response on April 15, 2011. (Dkt. 21). Defendant filed a reply on April 25, 2011. (Dkt. 22). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**.

## II.   FACTUAL BACKGROUND

The facts are largely undisputed, except as noted.  Plaintiff was employed by defendant as a Plastic Machine Operator between September 24, 2007 and January 21, 2008.  Plaintiff was hired along with nine other individuals to staff first shift production of a new assembly line that produced parts for the automotive industry. The assembly line consisted of a machine that discharged parts onto a conveyor belt that had four separate assembly stations and an inspection station.  (Talley Dep., p. 31).[1]  The assembly station closest to the machine was known as Station No. 1 and the stations were numbered consecutively from 1 to 4.  There were two parallel assembly lines each receiving parts from the same machine.  The lines were a little more than six feet away from each other.  (Talley Dep., p. 34). The stations on each line were an arm's length away from one another.  (Talley Dep., p. 34).  Employees could talk from station to station and from line to line. (Talley Dep., p. 33).

The first shift work crew apparently consisted of a mix of men and women and Bob Miltz was the supervisor.  Plaintiff was initially assigned to Station No. 1. Bob Miltz advised him that he was assigned to that location because he was the best for the position.  (Talley Dep., p. 63).  Plaintiff  admits he was better than

---

[1] Exhibits cited are those attached to defendant's motion for summary judgment (Dkt. 19), unless otherwise indicated.

anyone else at the position but found it to be more demanding than the other stations.  (Talley Dep., p. 61).  The other employees, both men and women, complained about the difficulty of Station No. 1, and their inability to do the work would slow down production.  (Talley Dep., p. 61).  As a consequence, plaintiff and another male employee by the name of John McInerny consistently were assigned to Station No. 1 while all of the other male and female employees were moved between the other stations.  (Talley Dep., p. 62).  In early November 2007, plaintiff complained to Bob Miltz about his regular assignment to Station No. 1, which he felt to be unfair because of the more demanding nature of the work on Station No. 1 compared to the other stations.  (Talley Dep., p. 65).  Mr. Miltz stated that he was the "go to" guy for the position and that they simply needed him there to keep production numbers up.  (Talley Dep., p. 63-64).  Another employee by the name of Mike from quality control reaffirmed to plaintiff how important it was that he stay in Station No. 1 in order to keep the manufacturing process moving forward.  (Talley Dep., p. 71).

On November 9, 2007, plaintiff decided that it was unacceptable that he and John were not being rotated as the other employees were.  As a consequence, plaintiff met with Bethany Garcia, the onsite human resources staff member. (Talley Dep., p. 66).  On November 12, 2007, the next work day, plaintiff was rotated to the other stations and a new system was adopted where all employees

were rotated to different stations at the top of each hour.  (Talley Dep., p. 66).

Unfortunately, according to plaintiff, this new process was not well received by the

other first shift assembly workers and he was ostracized by the other workers from

that point on.  (Talley Dep., p. 67).  According to plaintiff, they collectively made

it clear he was no longer welcome in the group and did things to sabotage his work

efforts.  For example, according to plaintiff, employees on stations before him in

the line would speed up so that parts would accumulate at his station making him

look like he could not keep up and the station following him would also speed up

so that it would appear that he was the bottleneck in the production process.

(Talley Dep., pp. 68-69).  Co-workers deny that they engaged in any effort to

sabotage plaintiff and state that he simply was unwilling to work together with

them as a team.  (Exhibit 1, ¶ 6; Exhibit 2; Exhibit 3, ¶¶ 3,4).

    During this same period of time, plaintiff observed that the women workers

seemed to get more tolerance with respect to their break time while he would

receive verbal reprimands if not back to his station exactly on time.  (Talley Dep.,

pp. 78-79).  Plaintiff admits, however, that he does not know if the women were

reprimanded regarding the length of their breaks and he never complained to

anyone in management about the timing of the breaks.  (Talley Dep., pp. 79-82).

Co-worker Tony Guzman notes that the break issue was nothing more than

plaintiff spending time keeping track of others instead of focusing on his own

work.  (Exhibit 3, ¶ 4).  Plaintiff admits that he was keeping track of everyone's breaks including his male co-workers.  (Talley Dep., p. 80).

During this same period of time that plaintiff raised objections regarding the lack of complete rotation amongst the work stations, he also felt that he was subject to unwanted sexual harassment from a male co-worker by the name of Kanubhai Patel.  Specifically, plaintiff asserts that Mr. Patel engaged in conduct that he found to be offensive, made statements that he found to be offensive and touched him in a way that he found to be offensive.  With respect to the comments, apparently Mr. Patel regularly made statements in front of all of the employees about a male who had apparently been caught masturbating at a Kohl's Department Store.  (Talley Dep., p. 51).  Mr. Patel joked about the various co-workers being the person who had been caught.  (Talley Dep., p. 51).  The co-workers and plaintiff initially laughed at the stories but plaintiff found them to grow old when repeated over the course of several days.  (Talley Dep., p. 52).  The female employees were located next to Mr. Patel as he told these stories but plaintiff is not sure whether or not they heard the stories.  (Talley Dep., p. 53).  Plaintiff could not recall anyone else complaining about Mr. Patel's stories and comments.  (Talley Dep., pp. 54-55).

In addition to the stories as set forth above, Mr. Patel also allegedly simulated masturbation with a hose used in the production process.  (Talley Dep.,

p. 47) and even asked Plaintiff once if he would like to "stick his butt."  (Talley Dep., p. 46).  Plaintiff admits all of these actions took place where all of the employees on the line could see them.  (Talley Dep., p. 47).  Mr. Patel and various co-workers deny that Mr. Patel engaged in these activities.  (Exhibit 1, ¶ 4; Exhibit 2; Exhibit 3, ¶ 3, Exhibit 4, ¶ 3).  Plaintiff claims he often told Mr. Patel to stop the comments and the actions and he would do so only to resume later on.  (Talley Dep., p. 55).

At some point, Mr. Patel brought in some Indian food that he tried to give to plaintiff while plaintiff was in his car during lunch break.  (Talley Dep., p. 56).  Plaintiff reached the conclusion that Mr. Patel had some form of attraction to him but told him he was not interested.  (Talley Dep., pp. 58-59).  Plaintiff did not raise or report any of the conduct or statements of Mr. Patel to anyone in management.  (Talley Dep., p. 50).

On December 19, 2007, plaintiff claims that Mr. Patel patted him on the butt in a fashion that plaintiff interpreted as being sexual in nature.  (Talley Dep., p. 43).  This followed an incident on an earlier date when plaintiff alleges that Mr. Patel caressed his hand.  (Talley Dep., p. 59).  Plaintiff complained to Bob Miltz and then to Bethany Garcia of Human Resources.  (Talley Dep., p. 42).  Plaintiff did so the same day.  (Talley Dep., p. 41).  Plaintiff admits the harassment he believed he had been subjected to stopped immediately on his report to Human

Report and Recommendation
Motion for Summary Judgment
*Talley v. U.S. Farathane*; Case No. 10-10784

Resources.  (Talley Dep., p. 115-116).

Immediately on plaintiff's complaint, the company, through its Human Resources Department, initiated an investigation into the allegations.  After speaking to plaintiff, Mr. Patel (Exhibits 5 and 6), Mr. Miltz (Exhibit 7) and other employees on the line (Exhibits 1-4), it was determined that Mr. Patel denied engaging in any inappropriate behavior, the other employees denied having observed any inappropriate behavior and plaintiff stood alone with respect to his allegations.  Steve Maczko, U.S. Farathane General Manager, as well as Carrie Labadie and Bethany Garcia of the Human Resources Department met with both plaintiff and Mr. Patel again on January 8th to discuss the investigation and to chart a course forward.  (Exhibits 4 and 8).  Because it was plaintiff's word against Mr. Patel's, it was decided to move Mr. Patel to a different shift so that the two would not work together. (Exhibits 4 and 8, Affidavit of Steve Maczko, ¶ 5).  No further sexual harassment occurred.  (Talley Dep., p. 115-116).

During the course of the January 8th meeting, plaintiff advised Mr. Maczko, Ms. Labadie, and Ms. Garcia of problems he claimed to have experienced working with Mr. Miltz since lodging the complaint regarding job rotation including being unfairly targeted for quality write-ups, having the line sped up to make him fall behind and as a result not receiving a pay increase following his 90-day review. (Exhibit 8, Maczko Affidavit, ¶ 1).  Mr. Maczko agreed to investigate plaintiff's

complaints about Mr. Miltz and the reasons for the denial of the 90-day pay increase.  (Maczko Affidavit, ¶ 8).

Mr. Maczko investigated plaintiff's claims regarding unfair treatment by Mr. Miltz and the issues surrounding the pay increase.  (Maczko Affidavit, ¶ 8).  Mr. Maczko determined that when plaintiff had complained about the rotation, a rotation schedule was made and adhered to.  The production line was not sped up to make plaintiff look bad - any increase in speed impacts each employee on the line.  (Maczko Affidavit, ¶ 8).  Plaintiff's complaints about being unfairly criticized for scrap rates were likewise determined to be without merit.  (Maczko Affidavit, ¶ 8).  Mr. Maczko determined that plaintiff's issues related to his inability to work within the context of an assembly team.  He tracked everyone else's activities and breaks instead of focusing on his own work.  (Exhibit 3).  He would get behind on his work and blame others and would actually encourage employees not to help each other.  (Maczko Affidavit, ¶ 9).

On January 16th, Mr. Miltz and Dan MacArthur, Manufacturing Manager, met with plaintiff to discuss his lack of acceptable performance and what he would need to do to achieve a wage increase.  Plaintiff was presented with a memorandum outlining deficiencies in his performance and what he needed to do to improve his work.  (Exhibit 9).  Plaintiff refused to accept the five point plan set forth in the memorandum and denied any deficiencies in his performance.  Plaintiff

returned to the production process and was disruptive, telling another employee "Bobby doesn't know who he is fxxking [alteration in affidavit] messing with.  He needs to stop messing with my money."  (Maczko Affidavit, ¶ 11).  Mr. Maczko explained that the assembly line to which plaintiff was assigned requires close and careful coordination between co-workers as parts move from one station to the next and plaintiff was simply unable to work in a team environment with his male and female colleagues.  As a consequence, the determination was made to terminate plaintiff's at-will employment.  (Maczko Affidavit, ¶ 12).  According to defendant, the termination had nothing to do with the allegations of sexual harassment or disparate treatment and was not based on plaintiff's gender.  (Maczko Affidavit, ¶ 13).

Immediately following his termination, plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission.  (Exhibit 10).  The charge asserts sexual harassment and disparate treatment based on sex as well as retaliation.  On September 17, 2009, the EEOC issued a determination finding reasonable cause to believe plaintiff had been subjected to retaliation and discharged in violation of 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964, as amended.  (Exhibit 11).  The EEOC issued a Dismissal And Notice of Rights with respect to the sexual harassment allegation. (Exhibit 12). The EEOC also issued a Notice of Right to Sue (Conciliation Failure) on this same

date.  (Exhibit 11).

## II.     ANALYSIS AND CONCLUSIONS

### A.     <u>Standard of Review</u>

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to

particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).[2]

B.      Hostile Work Environment

1.      Legal standards

In order to demonstrate a prima facie case of hostile work environment sexual harassment by a co-worker, plaintiff must show that (1) he is a member of a protected class; (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on plaintiff's sex; (4) the harassment unreasonably interfered with plaintiff's work performance or created a hostile work environment;

---

[2] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted because as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.  Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself.  *Id*. ("The standard for granting summary judgment remains unchanged.").

and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action. *See Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999); *Williams v. General Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999). Failure to establish a *prima facie* case is grounds to grant a defendant summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

      2.    Parties' arguments

Defendant argues that plaintiff has offered no credible proof that the alleged harassment by Mr. Patel was based on his sex. Rather, defendant says that, at worst, it was "boorish behavior" that is not actionable under Title VII. Defendant argues that, under Supreme Court precedent, to establish a same-sex hostile work environment claim, plaintiff must show credible evidence that the harasser is gay or that the conduct was based on sexual desire. According to defendant, plaintiff has not offered any evidence to support his theory of hostile work environment. Defendant also maintains that the few incidents about which plaintiff complained fall squarely into the category of teasing, isolated incidents, and vulgar banter by coworkers which do not create a hostile work environment and are not actionable. Lastly, defendant argues that an employer is only liable if it was notified of the harassment and failed to take prompt and appropriate remedial action. Here, plaintiff reported the alleged "butt grab" incident on December 19, 2007. As

Report and Recommendation
Motion for Summary Judgment
*Talley v. U.S. Farathane*; Case No. 10-10784

plaintiff acknowledges, an immediate investigation ensued and all further harassment stopped.  Mr. Patel was even moved to a different shift.  Thus, under the circumstances, defendant argues that plaintiff's hostile work environment claim must fail.

In response, plaintiff argues that summary judgment should not be granted to defendant because Mr. Patel's verbal sexual harassment led to two separate instances of physical sexual harassment.  Plaintiff asserts that because of "fear and intimidation by the management team," this treatment was tolerated by plaintiff. Plaintiff also asserts that if he were allowed to "verbally present and show documentation and cross examine these people, the truth would show thru [sic]." In support of his response, plaintiff attached two pieces of correspondence that he sent to Human Resources regarding the incidents at issue.

   3.   Analysis

In the view of the undersigned, plaintiff has not created any genuine issue of material fact regarding defendant's prompt remedial action.  It is quite clear that immediately after plaintiff lodged his complaint regarding Mr. Patel's behavior, a thorough investigation was undertaken and Mr. Patel was moved to another shift so that plaintiff and Mr. Patel would have no further contact.  Plaintiff does not dispute that after the investigation and shift change, no further harassment occurred.  In addition, the incidents complained of fall squarely into the category

of non-actionable isolated incidents of "boorish behavior" in the workplace.  Thus,

plaintiff's claim for hostile work environment sexual harassment fails and

defendant is entitled to summary judgment.

     C.    <u>Retaliation</u>

         1.    Ripeness/exhaustion

    Defendant first argues that plaintiff's retaliation claim is not ripe for

adjudication because he has not produced a right to sue letter from the EEOC

regarding his retaliation claim.  Rather, he has only produced a right to sue letter

with respect to his sexual harassment claim.  On September 17, 2009, the EEOC

issued a "Determination" stating that plaintiff's complaint alleged sexual

harassment and retaliation and discharge in violation of the Title VII.  (Dkt. 1, Pg

ID 4).  The EEOC determined that there was reasonable cause to believe that

plaintiff had been subject to retaliation and discharge and plaintiff would be issued

a dismissal and notice of right to sue to "address the sexual harassment litigation."

*Id*.  On November 25, 2009, the EEOC issued a Dismissal and Notice of Rights

specifically regarding plaintiff's sexual harassment claim, EEOC Charge No. 471-

2008-00941.  (Dkt. 1, Pg ID 6).  On that same date, the EEOC also issued a Notice

of Right to Sue (Conciliation Failure), which addressed plaintiff's charges against

defendant, EEOC Charge No. 471-2008-00941.  (Dkt. 1, Pg ID 5).  This notice

provided in part that the "EEOC found reasonable cause to believe that violations

of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case." *Id.*

In the view of the undersigned, while the notice of right to sue (conciliation failure) does not expressly indicate that it applies to plaintiff's retaliation claim, that is the only reasonable inference to be drawn.  Otherwise, the EEOC would have issued two contradictory notices of plaintiff's right to sue as to the sexual harassment claim, one finding it without merit and one finding it with merit.  This simply does not make any sense.  The conclusion that the notice of right to sue (conciliation failure) pertains to the retaliation claim and the dismissal and notice of right to sue pertains to the sexual harassment claim is also consistent with the September correspondence from the EEOC.  Thus, the undersigned finds no reasonable basis to conclude that plaintiff's retaliation claim is either unripe or not exhausted.

2.    Legal standards

"The plaintiff must make out a prima facie case of retaliation by establishing four elements:  (1) the plaintiff engaged in an activity protected by Title VII; (2) the defendant knew that the plaintiff exercised his or her rights; (3) the defendant took an employment action against the plaintiff that a reasonable

employee would have found materially adverse; and (4) there was a causal connection between the protected activity and the adverse employment action." *Watson v. City of Cleveland*, 202 Fed.Appx. 844, 855 (6th Cir. 2006). In the absence of direct evidence, proof of a Title VII retaliation claim is controlled by *McDonnell Douglas*, just as with a discrimination claim. In this case, plaintiff has not offered any direct evidence of retaliation. Thus, plaintiff's retaliation claim must be analyzed under the *McDonnell-Douglas* burden-shifting framework, which provides that if the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. Because the ultimate burden of persuasion rests with the plaintiff, once the defendant comes forward with legitimate nondiscriminatory reasons for its actions, the plaintiff has to demonstrate by a preponderance of the evidence that the employer's reasons were pretextual. *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987). The plaintiff has the ultimate burden of persuasion even though a *prima facie* case, once established, shifts the burden of producing evidence to the defense. *Id.*

To establish pretext, a plaintiff must show "'either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [his] discharge, or (3) that they were insufficient to motivate discharge.'" *Russell v. University of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008), quoting *Manzer v.*

Report and Recommendation
Motion for Summary Judgment
*Talley v. U.S. Farathane*; Case No. 10-10784

*Diamond Shamrock Chems. Co.*, 29 F. 3d 1078, 1084 (6th Cir. 1994), overruled on other grounds, *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009). "For an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Escher v. BWXT Y-12*, *LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010) (internal citations omitted). However, "[t]he investigation process does not need to be perfect, but the employer must make a reasonably informed and considered decision before taking an adverse employment action." *Id.* (internal citations and quotation marks omitted).

The plaintiff may show pretext in the same manner as in a disparate treatment theory of discrimination. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). In this circuit, proof of pretext has been organized around three general propositions: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the employee's] discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), abrogated on other grounds by *Gross v. FBL Financial Svcs., Inc.*, — U.S. —, 129 S. Ct. 2343 (2009), quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993). In order to determine whether the plaintiff has raised a genuine issue of

material fact as to pretext, the Court must consider not whether defendant's reasons for taking an adverse action against the plaintiff were actually good reasons, but instead whether the defendant had an honestly held belief that they were. *See Alan v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008).

> [T]he key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action. An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. [W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned.

*Id.*, quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007). "The 'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'" *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008), quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

### 3.     Parties' arguments

As to the merits of plaintiff's retaliation claim, defendant argues that plaintiff has not offered any proof that his participation in protected activity was a "significant factor" in his termination. Thus, defendant asserts that, construing the

evidence in the light most favorable to plaintiff, he can establish the first three elements of his prima facie case, but cannot overcome his inability to prove causation because timing is his only evidence.  Even if plaintiff has established a *prima facie* case of retaliation, defendant next asserts that it has rebutted that presumption by showing that it had a legitimate non-discriminatory reason for terminating him.  And, plaintiff has not come forward with any evidence to show pretext, which is his burden.

Plaintiff argues that the undisputed evidence shows that he was discharged in retaliation for filing the sexual harassment complaint.  Plaintiff claims that the undisputed evidence will show that before he made his complaint, there were no written complaints made or verbal concerns expressed regarding his work performance or ability to work as a team player.  (Dkt. 21).  Plaintiff has not offered any evidence to support his response by way of documents or affidavits or other evidence.

4.   Analysis

In the view of the undersigned, even if plaintiff has established a *prima facie* case of retaliation, defendant has rebutted that case with its non-discriminatory legitimate reasons for terminating plaintiff's employment.  The record is replete with evidence pertaining to the problems caused by plaintiff in the work place and plaintiff has not come forward with any evidence to show that defendant's non-

discriminatory reasons for terminating him were a mere pretext for retaliation.

Thus, defendant is entitled to summary judgment on this claim.

     D.    <u>Disparate Treatment</u>

        1.    Legal standards

To establish an inferential case of disparate treatment based on sex, the plaintiff may proceed under the "the burden-shifting framework first set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973)." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007). That construct addresses proof of discriminatory intent by circumstantial evidence, and it requires the plaintiff to present a *prima facie* case, whereupon the defendant must offer a legitimate reason for its actions. If the defendant does so, the plaintiff cannot proceed unless she offers some evidence that the defendant's proffered justification is a pretext for unlawful discrimination. *See Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1997). A plaintiff may establish a *prima facie* case of discrimination "by showing that: '(1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was ... treated differently than similarly situated nonprotected employees.'" *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (internal citations omitted).

2.    Parties' arguments

Defendant argues that plaintiff has no basis to pursue a disparate treatment claim because he has no evidence that he was treated differently than women at U.S. Farathane.  Plaintiff claims that women were treated more favorably than he was regarding promptly returning from breaks and the rotation of stations. According to defendant, with respect to the job rotation claim, plaintiff admits that the initial job assignment that did not require all employees to rotate into Station No. 1 benefitted both male and female employees.  (Talley Dep., p. 62).  As defendant points out, the fact he was a male apparently had no bearing on the absence of complete rotation since males and females alike were not rotated amongst all positions.  In fact, by his own testimony, he was the best suited for the position.  (Talley Dep., p. 61).

Defendant asserts that the claim regarding work breaks is equally flawed. First, as a matter of fact, plaintiff admits that he does not know if women workers were spoken to regarding the length of their breaks.  (Talley Dep., p. 79-82).  More importantly, while he was reminded of the necessity of going back on time (Talley Dep., p. 79), plaintiff was not written up or disciplined in any way in connection with breaks because he was always back on time.  (Talley Dep., p. 80). According to defendant, without adverse employment action, plaintiff cannot sustain a discrimination claim.  Plaintiff does not directly address these arguments in his

response.

3.    Analysis

In the view of the undersigned, plaintiff has failed to establish a *prima facie* case of disparate treatment discrimination.  Plaintiff has offered no evidence whatsoever that he was treated differently on the basis of sex or that similarly situated female employees were treated differently.  In addition, plaintiff has failed to offer any evidence that he was subject to an adverse employment action.  Thus, defendant is entitled to summary judgment on this claim.

## IV.    RECOMMENDATION

For the reasons set for above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 4, 2011                     s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on November 4, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Mark R. Smith, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Daryl L. Talley, 4 East Alexandrine, #1016, Detroit, MI 48201.

                                            s/Tammy Hallwood
                                            Case Manager
                                            (810) 341-7887
                                            tammy_hallwood@mied.uscourts.gov